[No. 13538-8-II.   Division Two.   May 6, 1992.]

PATRICIA ALLAN, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Carol L. Casey* and *Casey & Casey,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* for respondent.

PETRICH, C.J. — In November of 1987, the Department of Labor and Industries (Department), under authority of the "reverse offset" statute, decreased Patricia Allan's workers' compensation benefits in an amount equal to the offset then being taken by the Federal Social Security Administration. On review, the Board of Industrial Insurance Appeals upheld the Department. The Superior Court, on de novo review of the Board's record, affirmed the Board's ruling. Allan appeals and the Department cross-appeals the denial of statutory costs. We affirm with a minor modification.

In 1981, as a result of an injury incurred in the course of her employment, Allan became eligible for and received time loss benefits from the Department. In 1983, she also became eligible for and received disability benefits from the Federal Social Security Administration. She received full benefits from both agencies. Allan returned to work in 1985 for a period of approximately 10 months at a wage below that which she had earned prior to her industrial injury.

The Department substituted her loss of earning power benefits for the time loss benefits. Because of her employment, she became ineligible for Social Security disability benefits. Unfortunately, as a consequence of her injury, she was unable to continue working. In April of 1986 she again became eligible for Social Security disability benefits. Under federal law, her Social Security benefits within certain limitations were reduced by the amount the combined benefits exceeded 80 percent of her "average current earnings". 42 U.S.C. § 424(a). For our purposes "average current earnings" were calculated using the calendar year in which she received the highest wages or eligible income within a 5-year period prior to the year of disability.

Based on these calculations, the 80 percent monthly cap at the time of the later disability amounted to $1,048.80 compared to $1,672 as of the earlier disability determination. As a consequence, the Federal Social Security Administration retroactively imposed a $331 per month offset from April 1986 through October 1987. On November 5, 1987, the Department, having been advised that Allan was then again receiving Social Security benefits, notified her that beginning December 1, 1987, the Department would take the offset as allowed by RCW 51.32.220; that her monthly benefits from the Department would be reduced by $331; and that she would have to repay to the Department in installments the overpayment for November in the amount of $331.

Allan's contentions in this appeal are that the determination of the 80 percent monthly cap based on the average current earnings should have been calculated from the date of her earlier disability caused by the industrial injury from which she has never recovered rather than as of the date of the second disability determination by the Federal Social Security Administration; that the calculation of the offset was, in essence, a rule which did not satisfy the procedural requirements of the Administrative Procedure Act and, therefore, was a nullity; and that the notice of the reduced benefits was untimely.

CALCULATION OF THE OFFSET

While seemingly not questioning the validity of the identical offset calculation by the Federal Social Security Administration, Allan contends that the Department's statutory authority compels a different calculation. We disagree.

Allan argues that the Department's application of the state law unfairly penalizes her. By her valiant but unsuccessful attempt at reemployment, she has lost benefits she would have retained had no attempt been made. This, she argues, is contrary to the policy of the State Industrial Insurance Act. She cites RCW 51.32.095, the pertinent portion of which reads "[o]ne of the primary purposes of this title is to enable the injured worker to become employable at gainful employment." RCW 51.32.095(1). She also cites RCW 51.12.010, which calls for liberal construction of the Industrial Insurance Act for the purpose of reducing suffering and economic loss from injuries occurring in the course of employment. Allan relies on the rule of statutory construction that a statute should be construed consistently with the purpose of the act as a whole and with the declarations of policy within the act itself, such as the one contained in RCW 51.32.095. *See Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

■ While policy considerations may provide a valuable rule of statutory construction in interpreting an ambiguous statute, where the meaning is clear its meaning must be given effect without resort to such a rule. *State v. Theilken*, 102 Wn.2d 271, 275, 684 P.2d 709 (1984); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 284, 635 P.2d 426 (1981).

The relevant portion of the Washington statute at issue, RCW 51.32.220, reads as follows:

(1) For persons under the age of sixty-five receiving compensation for temporary or permanent total disability pursuant to the provisions of chapter 51.32 RCW, such compensation shall be reduced by an amount equal to the benefits payable under the federal old-age, survivors and disability insurance act as now or hereafter amended not to exceed the amount of the reduction established pursuant to 42 USC 424a.

. . . .
(5) In no event shall the reduction reduce total benefits to less than the greater amount the worker may be entitled to under this title or the federal old-age, survivors and disability insurance act.

This was enacted to take advantage of 42 U.S.C. § 424a(d) which allowed states to take an offset against the amount of Social Security benefits obtained by the insured, to the extent that the Social Security Administration would otherwise have been entitled to an offset against workers' compensation benefits.

42 U.S.C. § 424a, to which RCW 51.32.220(1) refers, permits an offset:

by the amount by which the sum of —
(3) such total of benefits under sections 423 and 402 of this title for such month, and
(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,

exceeds the higher of —
(5) 80 per centum of his "average current earnings", or
(6) the total of such individual's disability insurance benefits under section 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on his wages and self-employment income, prior to reduction under this section[.]

The relevant calculation for computing "average current earnings" is

one-twelfth of the total of his wages and self-employment income . . . for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled . . . and the five years preceding that year.

42 U.S.C. § 424a.

In the event of successive disabilities, the Federal Social Security Administration determination of entitlement is governed by 20 C.F.R. § 404.408(c)(4), which provides:

If an individual's entitlement to disability insurance benefits terminates and such individual again becomes entitled to disability insurance benefits, the amount of the reduction is again computed based on the figures specified in this paragraph (c) applicable to the subsequent entitlement.

Under this system, the offset is calculated when the party is again entitled to both Social Security and workers' compensation.

Allan's argument, though difficult to fathom, seems to be that the state statute cannot be read so as to allow the State to take an offset "in the exact manner prescribed by 42 U.S.C. 424a." She points out that there are differences in the computation of the offset. Under the state act the offset cannot result in a reduction of benefits to less than the greater amount of benefits under the workers' compensation act or those under the "federal old-age, survivors and disability insurance act." Under the federal scheme, however, workers' compensation benefits are not factored into the offset limitation. These differences, she claims, support a more liberal interpretation of the average current earnings cap. She argues that a narrow and literal interpretation of 42 U.S.C. § 424a makes RCW 51.32.220 meaningless because it would result in the State offsetting Social Security benefits rather than state benefits. She concludes that the year of disability in the state reverse offset computation more appropriately refers to the year of the industrial injury that caused her disability. We disagree.

RCW 51.32.220 is clear and unambiguous. It does not purport to adopt the federal scheme so as to offset federal benefits. It clearly provides that state benefits, not federal benefits, are reduced by the *amount* of federal benefits payable subject to the State's limitation as well as those limitations established in 42 U.S.C. § 424a. Federal benefits only become payable at or near such time as a disability is determined under federal law. Until then there can be no offset under the state scheme. Allan asks that we read into the statute additional provisions to achieve a desired result from her unfortunate circumstances. This we will not do.[1] Even were we persuaded by Allan's argument and inclined

---

[1] Even if Allan's interpretation would prevail, we fail to see any advantages to her. If the Department did not take the offset, the Federal Social Security Administration would be entitled to and undoubtedly would take the offset in the identical amount from social security benefits.

to favor her objective, we cannot, under the guise of construction, substitute our view for that of the Legislature. *Courtright v. Sahlberg Equip., Inc.*, 88 Wn.2d 541, 563 P.2d 1257 (1977). The later date of disability under the federal scheme was the appropriate date by which to calculate the offset.

## CALCULATION NOT A RULE UNDER APA

■ Allan argues that the method of offset computation used by the Department is invalid because the relevant provisions of the Administrative Procedure Act regarding rulemaking were not followed. Under RCW 34.05.030(2)(c) the Department is subject to the terms of the Administrative Procedure Act except with respect to "adjudicative proceedings" and judicial review and civil enforcement. Rulemaking by the Department is subject to the APA. Rulemaking is defined as

> legislation on the administrative level, i.e., legislation within the confines of the granting statute, as required by the constitution and its doctrine of non-delegability and separability of powers.

*Senior Citizens League, Inc. v. Department of Social Sec.*, 38 Wn.2d 142, 168, 228 P.2d 478 (1951). The test has also been articulated as the difference between making new laws and executing laws already in existence. *Earle M. Jorgensen Co. v. Seattle*, 99 Wn.2d 861, 865, 665 P.2d 1328, *cert. denied*, 464 U.S. 982 (1983).

Obviously, the calculation of the appropriate offset under RCW 51.32.220 does not constitute legislation. In this case, the Department applied existing law to a particular set of facts, giving rise to an order for which review was available by the Board pursuant to RCW 51.52.060, which was an action exempted from the APA under RCW 34.05.030.

## NOTICE

Under RCW 51.32.220, the statute instructing the Department to impose an offset, "[n]o reduction may be made unless the worker receives notice of the reduction prior to the month in which the reduction is made." RCW 51.32.220(4). In this case, the reduction became effective on November 1, 1987,

and the notice was mailed on November 5, 1987. According to the Department, Allan's benefits were not reduced until December of 1987, when she began receiving payments at the new rate. In this notice she was also informed that her allowable benefits were reduced commencing on November 1, 1987, and that the overpayment for the month of November would be taken out of her benefits in increments of $50 a month. Allan contends that under RCW 51.32.220(4) notice must be given a month before the reduction becomes effective, and thus notice was not timely given in this case.

■ Notwithstanding the merits of her position, Allan waived this objection because it was not set out in her petition for review of the ruling of the industrial insurance appeals judge as required by RCW 51.52.104. The relevant portion of this statute reads:

> Such petition for review shall set forth in detail the grounds therefor and the party or parties filing the same shall be deemed to have waived all objections or irregularities not specifically set forth therein.

RCW 51.52.104. In *Homemakers Upjohn v. Russell*, 33 Wn. App. 777, 658 P.2d 27 (1983), this division considered a case where an aggrieved party had failed to include objections to the record in a petition for review. This court held that under RCW 51.52.104, a plaintiff waived his right to object to any defect in the record because he did not file a petition for review with the Board of Industrial Insurance Appeals setting out these objections. *Homemakers*, at 782-83.

Based on the *Homemakers* case and the plain language of the statute, Allan waived her right to contest the offset in this case on the grounds of insufficient notice.

## STATUTORY ATTORNEY FEES

■ The Department cross-appeals, assigning error to the trial judge's failure to provide for statutory attorney fees. According to the Department, under RCW 51.52.140 the rules of civil practice apply to industrial insurance appeals and, under these rules and under RCW 4.84, statutory costs are authorized. The relevant portion of RCW 51.52.140 provides:

Except as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter.

The statutory basis for costs is RCW 4.84.030, which provides in part:

In any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements[.]

The Department as prevailing party is entitled to its statutory costs including statutory attorney fees.

The trial court's judgment is modified to allow statutory costs to the Department. The judgment is otherwise affirmed.

MORGAN and SEINFELD, JJ., concur.