2019 FEB -5 AM 10: 38



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77134-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON DALE BACKSTROM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 5, 2019 |
| | ) | |

VERELLEN, J. — In 1996, Brandon Backstrom committed aggravated first degree murder when he was 17 by killing two of his neighbors during a planned robbery. He was sentenced to a mandatory term of life in prison without the possibility of parole. Sixteen years later, the Supreme Court declared such sentences unconstitutional for juveniles in Miller v. Alabama,[1] and our state legislature enacted the Miller-fix statute, RCW 10.95.035 and RCW 10.95.030(3), to allow for resentencing of juveniles sentenced to life without parole.

Backstrom contends the court erred when resentencing him by failing to "meaningfully or sufficiently" consider all mitigating factors related to his youth at the time of his crime.[2] Because State v. Ramos,[3] and State v. Houston-Sconiers[4] clearly

---

[1] 567 U.S. 460, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[2] Appellant's Br. at 2.

[3] 187 Wn.2d 420, 387 P.3d 650, cert. denied, 138 S. Ct. 467 (2017).

[4] 188 Wn.2d 1, 391 P.3d 409 (2017).

clearly provide courts complete discretion to weigh youth-related mitigation evidence when sentencing and the record shows the court considered all available and required mitigating evidence, the court did not abuse its discretion when resentencing Backstrom.

Therefore, we affirm.

## FACTS

Backstrom killed a mother and her 12-year-old daughter during a planned robbery of their home when he was 17.[5] A jury convicted him on two counts of aggravated first degree murder while armed with a deadly weapon, and he received a mandatory sentence of two consecutive terms of life without the possibility of parole. Each sentence also carried a 24-month deadly weapon enhancement.

After Backstrom petitioned for resentencing pursuant to the Miller-fix statute, a trial court held a Miller hearing and resentenced him to two concurrent terms of a minimum of 42 years up to a maximum term of life. The court declined to impose any confinement for the deadly weapon enhancements.

Backstrom appeals.

## ANALYSIS

We review sentences imposed following a Miller resentencing hearing "to the same extent as a minimum term decision by the parole board before July 1, 1986."[6] Before July 1, 1986, a defendant seeking review of a parole board decision setting a

---

[5] The details of Backstrom's crime are available in our opinion affirming his conviction. State v. Backstrom, noted at 102 Wn. App. 1042 (2000) (unpublished).

[6] RCW 10.95.035(3).

minimum term had to file a personal restraint petition (PRP).[7] To obtain relief by filing a PRP when the petitioner had no prior opportunity for judicial review, which the parties agree Backstrom did not, the petitioner must show that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c).[8]

It is now well-established that sentencing courts "'must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant' and 'must have discretion to impose any sentence below the otherwise applicable [statutory] range and/or sentencing enhancements.'"[9] To show his restraint is unlawful, Backstrom must demonstrate the court abused its discretion in how it resentenced him.[10] On review, this court "cannot reweigh the evidence" even if it "cannot say that every reasonable judge would necessarily make the same decisions as the [trial] court did."[11]

A court conducting a Miller resentencing abuses its discretion when it "acts without consideration of and in disregard of the facts" or relies on speculation and conjecture in disregard of the evidence.[12]

---

[7] State v. Bassett, 198 Wn. App. 714, 721, 394 P.3d 430 (2017). In addition, the parties agree that the panel should review this as a PRP even though Backstrom filed a direct appeal.

[8] Id. at 722.

[9] State v. Bassett, 192 Wn.2d 67, 81, 428 P.3d 343 (2018) (quoting Houston-Sconiers, 188 Wn.2d at 21).

[10] In re Pers. Restraint of Dyer, 164 Wn.2d 274, 285-86, 189 P.3d 759 (2008).

[11] Ramos, 187 Wn.2d at 453.

[12] See Dyer, 164 Wn.2d at 286 (quoting In re Pers. Restraint of Dyer, 157 Wn.2d 358, 363, 139 P.3d 320 (2006)) (explaining when the Indeterminate Sentence Review Board abuses its discretion in setting minimum terms).

During a <u>Miller</u> resentencing hearing, the court must "fully explore the impact of the defendant's juvenility on the sentence rendered."[13] Consequently, both the court and counsel have an affirmative duty to ensure that proper consideration is given to the defendant's chronological age at the time of his crime and to youth-related characteristics, including immaturity, impetuosity, and a failure to appreciate risks and their consequences.[14] The court must also consider the defendant's childhood and life experiences before the crime, the defendant's capacity for exercising responsibility, and evidence of the defendant's rehabilitation since the crime.[15]

Backstrom presents a narrow legal challenge and contends the court failed to "meaningfully or sufficiently" consider mitigating circumstances related to his youth when resentencing him.[16] Backstrom does not challenge the sufficiency of the court's findings on resentencing nor does he contend the court failed to consider or disregarded relevant mitigating evidence. Essentially, Backstrom contends only that the court did not weigh the mitigating factors in the manner most favorable to him. But <u>Houston-Sconiers</u> states that the court has "complete discretion" in weighing

---

[13] <u>Ramos</u>, 187 Wn.2d at 443 (quoting <u>Aiken v. Byars</u>, 410 S.C. 534, 543, 765 S.E.2d 572 (2014)).

[14] <u>Id.</u> (citing <u>Miller</u>, 567 U.S. at 477).

[15] <u>See</u> RCW 10.95.030(3)(b) (requiring that courts sentencing juveniles for aggravated first degree murder account for the "age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated"); <u>accord</u> <u>Miller</u>, 567 U.S. at 477-78.

[16] Appellant's Br. at 2.

mitigating factors related to youth when sentencing,[17] and Ramos states that reviewing courts cannot reweigh evidence on appeal.[18]

In In re Personal Restraint Petition of Delbosque, a recent decision from Division Two of this court, the petitioner committed aggravated first degree murder in 1993 when he was 17 and received a mandatory sentence of life in prison without parole.[19] Following his Miller hearing in 2016, the trial court resentenced the petitioner to a minimum term of 48 years with a maximum term of life imprisonment.[20] The trial court entered a finding of fact that the petitioner could not be rehabilitated because, first, his present attitude towards others was "reflective of the underlying crime" and, second, the murder "was not symptomatic of transient immaturity, but has proven over time to be a reflection of irreparable corruption, permanent incorrigibility, and irretrievable depravity."[21] The petitioner challenged the finding as lacking substantial evidence, and the court agreed.[22] Because the trial court's finding on rehabilitation lacked substantial evidence, it essentially did not consider whether the petitioner had been or could be rehabilitated. Accordingly, the court held that the trial court failed to properly consider all mitigating circumstances related to youth, and it granted the PRP.[23]

---

[17] 188 Wn.2d at 21.

[18] 187 Wn.2d at 453.

[19] ___ Wn. App. 2d ___, 430 P.3d 1153, 1156 (2018).

[20] Id.

[21] Id. at 1160.

[22] Id.

[23] Id. at 1161.

Here, the court explicitly, thoughtfully, and carefully considered mitigating factors related to Backstrom's youth and his potential for rehabilitation.

> [H]e was young. Clearly, he was less than 18. It was a time at which all the science and, of course, our own common sense tells us that his brain and accompanying decision-making abilities were not fully formed.
>
> His lifestyle at the time clearly illustrated that he had very poor decision-making abilities and very poor judgment. So he certainly wasn't a person who was more mature than a typical 17 year old, and I think by his own statements . . . as he put it, [even more] selfish than some and possibly self-centered based on his age and circumstances.
>
> I considered the surrounding environmental and family circumstances. It does appear with the exception of support of grandparents that Mr. Backstrom had little or no family support. . . .
>
> . . . He was drinking excessively. He was attending school sporadically, and he did not have much in the way of external controls whatsoever.
>
> . . . .
>
> In terms of his rehabilitation, there's no question in my mind that the person who sits here today is very, very different than the person of 20 years ago . . . . And if Dr. Muscatel is correct that success in prison translates to a good chance of success in society if released, then his prospects for rehabilitation . . . are fairly strong.[24]

The court also weighed whether Backstrom's age impacted his legal defense, his potential impetuousness at the time of the crime and whether impetuousness played a role in the crime itself, and whether his compromised decision-making abilities reduced his capacity for exercising responsibility and appreciating risks. The

---

[24] Report of Proceedings (RP) (June 28, 2017) at 181-84.

court found Backstrom's chronological age, his family circumstances, and his prospects for rehabilitation were mitigating factors.[25]

In keeping with its "complete discretion"[26] to weigh factors related to the defendant's youth and its obligation to "'fully explore the impact of the defendant's juvenility on the sentence rendered,'"[27] the court also considered the nature of the crime and Backstrom's role in it.

> I will say, having reviewed the entire transcript of the testimony, including the motion for new trial, I do believe that the evidence supports that Mr. Backstrom was found guilty of what he did and that the evidence is that his participation in the crime was significantly greater than his codefendant. . . .
>
> . . . .
>
> In terms of familiar and peer pressures [when deciding to commit the crime], I do not find this to be a significant factor. . . .
>
> There was an argument made that [Backstrom's cousin], being older by five years, that he was the one who was somehow in control. He at that time was, there was testimony he had some gang involvement, which Mr. Backstrom was aware of, but in terms of all the evidence that came out in the case, it does appear that it was Mr. Backstrom that initiated and was the moving party in the events that ensued that night.[28]

---

[25] We note that the court reviewed the entire trial transcript, testimony given as part of Backstrom's motion for a new trial, the original sentencing decision, the denial of Backstrom's motion for a new trial, the original appellate opinion, memoranda provided for resentencing, an expert report and a mitigation investigation report prepared for the Miller hearing, letters supporting and opposing Backstrom's petition, victim impact letters, and all statements and testimony from the hearing itself. Id. at 179-80.

[26] Bassett, 428 P.3d at 350.

[27] Ramos, 187 Wn.2d at 443 (quoting Aiken, 410 S.C. at 543).

[28] RP (June 28, 2017) at 182-83.

Although Backstrom may disagree with how the court weighed the evidence, we cannot reweigh the evidence on review.[29] Unlike Delbosque, Backstrom does not challenge any of the court's findings as lacking substantial evidence, which makes them verities on appeal.[30] The court's new sentence complies with the Miller-fix.

Moreover, Backstrom's new sentence is significantly less than his original sentence. After carefully considering all mitigating factors from Backstrom's youth and the crime itself, the court sentenced Backstrom to roughly less than half of his original sentence.[31] And he will have the possibility of parole approximately 20 years from now when that possibility did not exist before. The court did not abuse its discretion when it resentenced Backstrom.

Accordingly, we affirm.

WE CONCUR:

---

[29] Ramos, 187 Wn.2d at 453.

[30] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

[31] Backstrom will serve his 42-year sentences concurrently rather than consecutively, and he will no longer receive any incarceration for the weapon enhancements to his original sentence, which eliminates four years from his sentence.